

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JMH:KM                                          *271 Cadman Plaza East*
F. #2023R00058                                  *Brooklyn, New York 11201*

March 14, 2024

<u>By E-mail</u>

The Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Mitchell Bostic
     <u>Magistrate Docket No. 24-215 (TAM)</u>

Dear Judge Merkl:

   The government respectfully submits this letter in support of its application for a pretrial order of detention for the defendant Mitchell Bostic.  On March 11, 2024, the defendant—who is on parole after serving 26 years in New York State prison for second-degree murder—was charged with attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), after demanding money from a cash register while brandishing a firearm at a store clerk and then shooting the clerk in the leg before fleeing the scene.

   While this offense alone counsels overwhelmingly in favor of detention pending trial, it is but one of many episodes in the defendant's life in which he uses violence, including deadly violence, to achieve his objectives.  The nature of the instant offense, coupled with the defendant's violent criminal history and willingness to continue committing violent crimes while under parole supervision, demonstrates that the defendant poses an intolerable danger to the community.  As set forth below, the defendant is also a flight risk.  Because no condition or combination of conditions can reasonably secure the safety of the community or his appearance as required, the defendant should be detained pending trial.

I. <u>Background and Charged Offense Conduct</u>

   As charged in the above-captioned complaint (the "Complaint"), on January 4, 2023, at approximately 8:35 p.m., the defendant attempted to rob a commercial establishment ("Store-1") located on Van Sinderen Avenue in Brooklyn, New York (the "January 2023 Attempted Robbery").  Video surveillance recovered from Store-1 after the incident shows the defendant shoot a store employee ("Victim-1") in his upper thigh, after brandishing a firearm at Victim-1 and demanding money from a register.  After he shot Victim-1, the defendant was

captured on video fleeing in a vehicle that has since been identified as a Chevrolet Equinox (the "Chevrolet") registered to an individual whom whom law enforcement's investigation revealed is the defendant's former significant other.  In addition to the defendant's link to the Chevrolet, as detailed in the Complaint, the evidence against the defendant includes photographs from the defendant's own iCloud account in which he is wearing clothing matching that of the shooter, photographs of the defendant taken by law enforcement during a traffic stop while driving the Chevrolet just days after the attempted robbery, and historical cell-site location data placing the defendant in the vicinity of Store-1 close in time to the robbery and shooting.  For this crime, the Complaint charges the defendant with one count of attempted Hobbs Act Robbery—however, the government's investigation into the above-described shooting is ongoing, including with respect to a potential felon in possession charge under 18 U.S.C. § 922(g), in light of the defendant's criminal history.

In addition, at the time of the January 2023 Attempted Robbery, the defendant was on parole with the New York Department of Corrections and Community Supervision ("DOCCS") after serving 26 years in prison following his conviction for second-degree murder relating to a killing the defendant committed in Brooklyn in November 1992 in which he shot his victim five times, including in the head.  The defendant was first released to DOCCS supervision on September 10, 2019, and was on parole at all relevant times described herein.  Since his release, DOCCS records show the defendant has increasingly failed to report to or otherwise communicate with his parole officer as directed.  For example, over the past year, the defendant failed to report as directed on at least seven occasions.  Most recently, on March 6, 2024, the defendant failed to report after multiple unsuccessful attempts by DOCCS to reach him.

On March 13, 2024, agents executed a search warrant for the defendant's residence during which they seized numerous pieces of evidence from the defendant's bedroom further implicating him in the January 2023 Attempted Robbery, in addition to other violent crimes for which the defendant is under investigation as set forth in more detail below.  This includes the distinctive black, red and white sneakers, black baseball cap with a white emblem, and black puffer coat worn by the defendant during the January 2023 Attempted Robbery, as depicted at paragraphs three, four and seven of the Complaint.  It also includes an intact .40 caliber bullet, which is the same caliber as the deformed bullet recovered from the scene of the January 2023 Attempted Robbery.

## II.   Additional Offenses Under Investigation

While the Complaint charges only one attempted Hobbs Act Robbery—albeit one in which a victim was shot and injured—that offense is but one of a series of acts of violence of which the government is aware.  In addition to this shooting, the defendant is suspected of committing two completed Hobbs Act Robberies that occurred in December 2022 and February 2024.  During the first robbery on December 24, 2022 (the "December 2022 Robbery"), the defendant is suspected of brandishing a firearm at an employee ("Victim-2") of another Brooklyn-based store ("Store-2"), demanding money from the register, and subsequently fleeing with $300.00.  During the second and most recent robbery on February 4, 2024 (the "February 2024 Robbery"), the defendant is suspected of attempting to steal merchandise from yet another Brooklyn-based commercial establishment ("Store-3") and, when approached by an employee ("Victim-3"), pulling a knife from his pocket and slashing Victim-3 in her face and neck.

Surveillance footage recovered after the February 2024 Robbery shows the defendant entering Store-3 on crutches with a medical boot on his left leg. According to DOCCS records, in August 2023, the defendant reported to his parole officer that he underwent surgery to his left foot after sustaining injuries during a moped accident. Moreover, during the search of the defendant's apartment on March 13, 2024, agents recovered what appears to be the same green satchel and pink hooded sweatshirt worn by the robber during the February 2024 Robbery.

III.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts shall order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of dangerousness or flight, the Bail Reform Act lists the following four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involved a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We

find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).

IV.     The Defendant Should Be Detained Pending Trial

The defendant is a violent recidivist who readily and repeatedly uses guns and knives to get his way.  No condition or combination thereof will protect the community from the danger posed by the defendant or mitigate the risk of his flight.  As explained below, each of the factors set forth in 18 U.S.C. § 3142(g) weighs heavily in favor of pretrial detention in this case.

A.     The Violent Nature and Circumstances of the Crime Charged Support Detention

As explained above, the defendant is charged with a serious federal crime during which he used life-threatening violence against an innocent store employee.  In attempting to rob Store-1, in violation of 18 U.S.C. § 1951(a), the defendant threatened Victim-1 with a firearm and, when unable to secure the cash he demanded from the register, shot Victim-1 in the leg before fleeing the scene.

For this crime, the defendant faces a potentially lengthy prison sentence, which creates a strong incentive for him to flee from prosecution.  See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee").  If convicted on the January 2023 Attempted Robbery alone, the defendant likely faces nearly 10 years in prison under the United States Sentencing Guidelines, given that he discharged a firearm during the incident injuring Victim-1, and based on a Criminal History Category of II in light of his prior murder conviction.  The statutory maximum is 20 years, and, if and when the government charges the defendant with being a felon in possession in violation of 18 U.S.C. § 922(g)(1), he faces a maximum potential sentence of 35 years—essentially, a life sentence. The defendant's total potential prison exposure is likely substantially higher, however, when considering the additional violent crimes for which the defendant is suspected, as set forth above, including another felon in possession charge for the bullet recovered during a search of the defendant's residence on March 13, 2024.

B.     The Weight of the Evidence Supports Detention

Where, as here, the evidence of guilt is strong, there is "considerable incentive to flee."  See Millan, 4 F.3d at 1046 (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee").  As described above and in the Complaint, the evidence in this case includes surveillance footage of the attempted robbery and shooting, as well as the defendant's arrival to and departure from the vicinity of Store-1 in the Chevrolet registered to the defendant's former significant other.  It also includes photographs from the defendant's own iCloud account, in which he can be seen wearing the same distinctive sneakers as on the day

of the robbery, and from a car stop of the defendant while driving the Chevrolet days after the robbery, in which he was captured wearing the same glasses and puffer jacket as the gunman from Store-1's surveillance footage.  Moreover, while executing a search warrant at the defendant's home on March 13, 2024, agents recovered from his bedroom the same distinctive sneakers and puffer jacket that he wore during the January 2023 Attempted Robbery.  In addition, historical cell-site location data obtained during law enforcement's investigation into the offense places the defendant within four blocks of Store-1 approximately one hour before the robbery, within three blocks of Store-1 approximately ten minutes before the robbery, and within two miles of Store-1 shortly after the robbery.

C.    The Defendant's History of Violent Crime and Noncompliance While Under Supervision Support Detention

On November 15, 1993, following a trial, the defendant was convicted in New York State court of second-degree murder, a class A felony, in violation of New York Penal Law § 125.25, after fatally shooting his victim five times inside 284 Sutter Avenue in Brooklyn, New York.  The defendant was sentenced to a term of imprisonment of 25 years to life.  On September 10, 2019, after serving 26 years in prison, the defendant was released to parole supervision with DOCCS.

As described above, since being released to DOCCS supervision, the defendant has repeatedly failed to report as directed by his parole officer, including as recently as March 6, 2024.  The defendant's history of failing to abide by his release conditions further supports a finding that the defendant is a risk of flight if not detained pending trial and demonstrates his likely disregard for any conditions the Court might impose on him.  Moreover, being on parole after more than a quarter-century in prison and subject to going back to prison has utterly failed to deter the defendant from reengaging in wanton violent crime.

D.    The Defendant Poses a Significant Danger to the Community if Released

The defendant's dangerousness to the community cannot be overstated.  In the four and half years since the defendant was released on parole after spending 26 years in prison, he shot Victim-1, is suspected of threatening Victim-2 with a firearm, and slashing Victim-3 with a knife.  The defendant continuously resorts to life-threatening violence against innocent victims in his own Brooklyn community.  There is no reason to believe he would be deterred from doing so again while on pretrial supervision by the Court.

V.    <u>Conclusion</u>

        The defendant has every reason to flee, and the community should not be put in danger—as Victim-1 and several others have been—by the defendant's release.  Accordingly, as set forth above, the defendant should be detained pending trial.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                            By:     /s/ Kate Mathews_____
                                        Kate Mathews
                                        Assistant U.S. Attorney
                                        (718) 254-6402

cc:     Clerk of Court (TAM) (By E-mail)
        Defense counsel of record (By E-mail)
        U.S. Pretrial Services Agency (By E-mail)